UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | |
|---|---|
| JOSHUA BROWNING, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 6:24-CV-00124-CHB |
| | ) |
| v. | ) |
| | ) |
| GAVIN DOWNEY, *et al.*, | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| Defendants. | ) |

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court to consider two motions to dismiss Plaintiff Joshua Browning's Second Amended Complaint. [R. 42]. Defendant officer Gavin Downey filed a Motion to Dismiss Second Amended Complaint, [R. 46], and the remaining defendants, including officers David Gabbard and Chris Stapleton, nurse Brandon Perry, counselor Bobbie Chitwood, and Warden John Gilley, filed a Joint Motion to Dismiss, [R. 45]. The parties have filed their respective responses and replies. [R. 47]; [R. 49]; [R. 51]; [R. 52]. This matter is ripe for review. For the following reasons, the Court will grant Downey's motion and dismiss all claims against him. Further, the Court will grant the remaining defendants' joint motion as it pertains to the *Bivens* claims against Gabbard, Stapleton, Chitwood, and Gilley, but deny the joint motion as it pertains to the *Bivens* claim against Perry and the state law claims in Count III and Count IV against all the remaining defendants. Lastly, with claims still pending, the Court will assign this matter to a Magistrate Judge for pretrial management.

    **I.**    **BACKGROUND**

In 2023, Browning was confined in the United States Penitentiary-McCreary in Pine Knot, Kentucky. [R. 42, p. 4]. On April 17, 2023, officer Downey was transferring Browning to a

different cell in the segregation unit. *Id*. Upon arriving at the cell, Browning objected to his new placement because his cellmate was a member of a different faction and their placement together was likely to cause a fight between the two of them, a fact allegedly known to Downey. *Id*. at 4–5. Browning alleges that Downey became angry after he had a "heated exchange" with officer Gabbard. *Id.* at 5. According to Browning, Downey then escorted him to a new cell and severely beat him, breaking his nose, cracking three of his front teeth, and causing serious lacerations.[1] *Id.* at 6.

Browning states that as a result of the attack he lost consciousness and subsequently experienced blurred vision and cognitive issues. *Id.* According to Browning, later that day he asked officer Gabbard to be given medical treatment. *Id*. He further asked officer Stapleton to take him to the hospital for medical care, but both men allegedly refused. *Id.* Browning states that over the next forty-five days he repeatedly asked all six of the named defendants to provide him with medical care, but none was given. *Id*. Browning further alleges that nurse Perry did not fully and accurately record his injuries from that day, instead writing in his medical records that Browning had sustained only a minor scratch on his head and had "poor dentition." *Id.* at 8. According to Browning, he later submitted several inmate grievances to unit counselor Chitwood, but Chitwood did not process any of them. *Id.* at 7. Browning further alleges that he handed a formal grievance directly to Warden Gilley, who ignored it. *Id.*

---

[1] Browning's original complaint claimed violation of the Eighth Amendment for Downing's alleged excessive, indeed gratuitous, use of force. [R. 1, p. 8]. But his constitutional claim in his amended complaint, now the operative pleading, is based solely upon the defendants' alleged failure to provide medical care and to document his injuries. *See* [R. 42, pp. 6–9]. The defendants' argument regarding Browning's claims for excessive force and failure to protect, [R. 45, p. 10]—copied *verbatim* from its prior iteration (like much of their motion), *compare id.*, *with* [R. 22]—therefore seeks dismissal of claims that Browning does not assert. The Court disregards this aspect of their motion.

Based upon these events, Browning asserts one federal claim and three state claims against the defendants. In Count I, Browning asserts a claim pursuant to the doctrine announced in *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). [R. 42, p. 9]. He contends that all of the defendants "were deliberately indifferent to Plaintiff's obvious and known medical needs" in violation of the Eighth Amendment because they denied him needed medical treatment. *Id.* In Count II, Browning asserts that Downey's attack amounted to an assault and battery under Kentucky law. *Id.* at 9–10. In Count III, Browning argues that all of the defendants committed fraud under Kentucky law by not making a record of the alleged attack by Downey, the injuries he suffered as a result of it, or his requests and need for medical care. *Id.* at 10–11. In Count IV, Browning asserts that the same alleged failure to document his injuries constituted a civil conspiracy between all of the defendants. *Id.* at 12–13. Browning seeks damages and ancillary relief. *Id.* at 13.

## II.     DISCUSSION

Seeking dismissal pursuant to Rule 12(b)(6) and invoking the Supreme Court's decisions in *Ziglar v. Abbasi*, 582 U.S. 120 (2017) and *Egbert v. Boule*, 596 U.S. 482 (2022), all of the defendants contend that *Bivens* does not provide an implied remedy for Browning's claims under the Eighth Amendment. *See* [R. 45, pp. 6–16]; [R. 46, pp. 2–8].[2] Challenging the Court's subject matter jurisdiction pursuant to Rule 12(b)(1) and invoking the Westfall Act, specifically 28 U.S.C.

---

[2] In a single sentence, the defendants who submitted the joint motion to dismiss assert that "Browning's *Bivens* claims should be dismissed as time-barred." [R. 45, p. 6]. This sentence appears out of context as part of their cognizability discussion and is entirely unsupported by argument anywhere in their brief. The Court construes this is a drafting error and does not consider this as a properly raised contention.

Further, the defendants attach a handful of Browning's medical records to their motion. [R. 45-1]. But the defendants did not authenticate those records, and they make no effort to explain how the Court could consider them when addressing their Rule 12(b)(6) motion to dismiss and facial Rule 12(b)(1) challenge to subject matter jurisdiction. The Court will therefore disregard them.

§ 2679(b), each of the defendants argue that they are immune from state law tort claims arising from acts done within the scope of their employment. [R. 45, pp. 16–17]; [R. 46, p. 11]. Defendant Downey further argues that the state law claims against him are barred by the statute of limitations or otherwise fail to state a claim. [R. 46, pp. 8–10].

In his two nearly-identical responses, Browning notes that the Supreme Court recognized a *Bivens*-type claim for inadequate medical care in the prison context in *Carlson v. Green*, 446 U.S. 14 (1980). [R. 47, pp. 4–8]; [R. 51, pp. 4–8]. He thus argues that his Eighth Amendment claim does not present a "new context" and thus survives scrutiny under both *Ziglar* and *Egbert*. [R. 47, pp. 4–8]; [R. 51, pp. 4–8]. He further argues that the defendants' actions were committed outside the scope of their employment, and that most of the defendants have previously and expressly so argued. [R. 47, pp. 8–10]; [R. 51, pp. 8–10].[3]

    **A.**    ***Bivens* claims**

The Court begins with the defendants' Rule 12(b)(6) challenges to Browning's claims under *Bivens* made within both motions. The defendants contend that *Bivens* does not provide an implied damages remedy for their alleged failure to provide Browning with medical care following the attack. [R. 45, pp. 6–16]; [R. 46, pp. 2–8]. The defendants assert that almost *any* factual distinction between the particular facts of *Carlson* and Browning's claims—whether related to the

---

[3] To be clear, defendant Downey did not join in this argument, which was asserted to contest a now-dismissed claim under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* Downey joined only in the other defendants' arguments regarding *Bivens*. *See* [R. 25, p. 2]. The other individual defendants disclaim having made such an argument, contending that it was argued solely by the United States, which was previously a defendant. *See* [R. 49, pp. 6–7]. That contention is largely refuted by the record: these individual defendants filed a *joint* motion to dismiss with the United States in a single document. *See* [R. 22]. In that motion all of the moving defendants seemingly argued that the employees' actions were done outside the scope of their employment, at least as it pertained to all of the intentional torts alleged at that time. *See, e.g., id.* at 24 ("[T]he alleged assault and refusal to provide medical care that are the subject of Browning's claims of assault, battery, conspiracy, and negligence, do not involve government employees in the scope of their employment."). Having done so, they cannot now disavow that position.

particular medical condition involved, the chronic or exigent nature of the care provided, or the defendant's motive in not providing it—presents a "new context" under *Egbert. See* [R. 45, pp. 10–12]; [R. 46, pp. 6–8]. They further argue that special factors weigh strongly against implying a new *Bivens* remedy here. [R. 45, pp. 13–16]; [R. 46, pp. 5, 8].

Federal Rule of Civil Procedure 12(b)(6) affords grounds to dismiss a claim for failure to state a claim upon which relief can be granted. *Gardner v. Quicken Loans, Inc.*, 567 F. App'x 362, 364 (6th Cir. 2014). When addressing a motion to dismiss, the Court views the complaint in the light most favorable to the plaintiff and accepts as true all 'well-pleaded facts' in the complaint. *D'Ambrosio v. Marino*, 747 F.3d 378, 383 (6th Cir. 2014). A complaint must contain allegations, either expressly stated or necessarily inferred, with respect to every material element necessary to sustain a recovery under some viable legal theory. *Philadelphia Indem. Ins. Co. v. Youth Alive, Inc.*, 732 F.3d 645, 649 (6th Cir. 2013). The Court evaluates Browning's complaint under this standard.

Congress long ago created a federal statute authorizing a damages action against state officials for violation of civil rights under 42 U.S.C. § 1983. It did not provide a similar remedy for constitutional violations by federal actors. *See Enriquez-Perdomo v. Newman*, 54 F.4th 855, 867 (6th Cir. 2022) (citation omitted). In 1971, the Supreme Court implied such a cause of action against federal officers for a Fourth Amendment claim involving the arrest of a citizen unsupported by warrant or probable cause and for the excessive use of force. *Bivens*, 403 U.S. at 397. The Supreme Court also implied a damages remedy under the Fifth Amendment for an allegation that a member of Congress engaged in sex discrimination in employment. *Davis v. Passman*, 442 U.S. 228, 233 (1979). Finally, the Supreme Court implied a damages claim under the Eighth Amendment for a prisoner's claim that federal officials were deliberately indifferent to his serious

medical needs. *Carlson*, 446 U.S. at 17–18. However, since this high watermark of these implied causes of action, the Supreme Court has since scaled back the applicability and scope of *Bivens* and its progeny. This Court has previously noted that:

> Since that nine-year span concluded forty years ago, the Supreme Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." Indeed, it has expressly rejected requests to extend *Bivens* on eight different occasions. The Supreme Court has thus made clear that *Bivens* is a remedy available only in "limited settings," and that expanding that remedy is disfavored. Federal courts have viewed the decision in *Ziglar* as clearly "narrow[ing] the circumstances in which a plaintiff may successfully state a claim under principles established in *Bivens*."

*Hower v. Damron*, No. 0:20-CV-53-WOB, 2021 WL 4449980, at *4 (E.D. Ky. Sept. 28, 2021) (citations omitted), *aff'd*, No. 21-5996, 2022 WL 16578864 (6th Cir. Aug. 31, 2022); *see also Callahan v. Fed. Bureau of Prisons*, 965 F.3d 520, 523 (6th Cir. 2020) ("What started out as a presumption in favor of implied rights of action has become a firm presumption against them."). Given this history, the Ninth Circuit has stated that "[e]ssentially then, future extensions of *Bivens* are dead on arrival." *Harper v. Nedd*, 71 F.4th 1181, 1187 (9th Cir. 2023).

Conversely, however, the Supreme Court has repeatedly rejected attempts to overrule *Bivens*, *Passman*, or *Carlson*, or to foreclose claims that fall within their already-established confines. *See Ziglar*, 582 U.S. at 134 ("[T]his opinion is not intended to cast doubt on the continued force, or even the necessity, of *Bivens* in the search-and-seizure context in which it arose."). For example, in *Goldey v. Fields*, 606 U.S. 942 (2025) (*per curiam*), the Supreme Court declined to recognize a *Bivens* remedy for excessive force claims under the Eighth Amendment, but implicitly rejected a direct call by the petitioner to categorically repudiate "the entire concept of a judicially inferred cause of action to enforce the Constitution." *See* Petition for Writ of Certiorari at 13, *Goldey v. Fields*, 606 U.S. 942 (No. 24-809) (2025). Thus, "the current anatomy of *Bivens* is to maintain the status quo, neither expanding nor retreating from the existing field of cognizable

claims." *Mattox v. United States*, No. 7:24-CV-74-REW, 2025 WL 2524845, at *7 (E.D. Ky. Sept. 2, 2025). The Court therefore rejects the defendants' invitation to functionally overrule *Carlson* where the Supreme Court has refused to do so. *See Agostini v. Felton*, 521 U.S. 203, 237 (1997) ("[I]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." (citation omitted)); *Hurst v. Derr*, No. 23-15523, 2024 WL 3842097, at *2 (9th Cir. Aug. 16, 2024) (Smith, J., concurring) ("[I]t was also inappropriate for the district court to conclude that '[t]he landscape ... has changed' and that *Bivens* was essentially overruled by *Egbert*." (*citing Agostini*, 521 U.S. 237)); *Snowden v. Henning*, 72 F.4th 237, 242 (7th Cir. 2023) (noting that the Supreme Court "has stopped short of overruling the *Bivens* trilogy"), *cert. denied*, 145 S. Ct. 137 (2024).

The Court employs a two-step analysis when deciding whether *Bivens* provides a remedy for alleged constitutional misconduct by federal officials. First, the Court asks "whether the case presents a new *Bivens* context—*i.e.*, is it meaningfully different from the three cases in which the Court has implied a damages action." *Egbert*, 596 U.S. at 492 (citations and internal quotation marks omitted). The Supreme Court has explained that:

> If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

*Ziglar*, 582 U.S. at 139–40. If the case does present a "new context," in the second step the Court assesses whether there are any "special factors" which indicate that the courts are arguably less

equipped than Congress to "weigh the costs and benefits of allowing a damages action to proceed." *Id.* at 136. Although those questions are logically and analytically distinct, in *Egbert* the Supreme Court modified *Ziglar*'s two-step test when it asserted that the first question is "often" subsumed into the second: "[w]hile our cases describe two steps, those steps often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." *Egbert*, 596 U.S. at 492.

When deciding whether a claim presents a new context, the Supreme Court has admonished courts against a misplaced focus upon immaterial differences between the facts and claims involved in *Carlson* and those in the case at hand. *See Ziglar*, 582 U.S. at 149 ("Some differences, of course, will be so trivial that they will not suffice to create a new *Bivens* context."). Accordingly, this Court and others within the Sixth Circuit have repeatedly held, post-*Ziglar* and post-*Egbert*, that a remedy remains available under *Carlson* for most claims against prison officials—particularly those directly responsible for providing health care—for inadequate medical care in the prison context. In upholding such a claim, this Court has specifically stated that

> to determine if Mattox's claims require extension of *Carlson* to a new context, the Court asks not about the particulars of his ailments or the medical treatments for them, but instead whether his claims implicate meaningfully different separation-of-powers concerns than those present in *Carlson* itself. A review of the complaint makes clear that they do not. Mattox sues his immediate healthcare providers (Eperson and Dr. Lucius) and health care administrators (Blankenship, Slone, and Bayes), each of whom was directly involved in decisions about his medical care and/or his facility placement. Reviewing the rank of the officers involved, the defendants are of the same level as those involved in *Carlson*. Likewise, the constitutional right at issue and the legal mandate under which the officers were operating are defined in both cases by the Eighth Amendment, specifically, the prohibition against deliberate indifference to medical needs.

*Mattox*, 2025 WL 2524845, at *9 (citation omitted); *see also Patton v. Blackburn*, No. 21-5995, 2023 WL 7183139, at *3 (6th Cir. May 2, 2023) (noting generally that "the Supreme Court has recognized a *Bivens* action for an Eighth Amendment claim based on the failure to provide adequate medical care"); *Greene v.*

*United States*, No. 21-5398, 2022 WL 13638916, at *4 (6th Cir. Sept. 13, 2022); *Morel v. Dept. of Justice*, No. 7:22-CV-15-DCR, 2022 WL 4125070, at *4–5 (E.D. Ky. Sept. 9, 2022); *Werman v. Joyner*, No. CV 22-71-DLB, 2023 WL 5537900, at *7 (E.D. Ky. Aug. 28, 2023) ("The foregoing plainly refutes the defendants' assertion that *Carlson* was limited to emergency medical treatment. While some cases have read *Carlson* in that manner, the Court respectfully disagrees." (citation omitted)); *Baldwin v. Hutson*, No. 6:19-CV-151-REW-HAI, 2022 WL 4715551, at *2 (E.D. Ky. Sept. 30, 2022).

Conversely, claims with only a tangential connection to medical care are incognizable. *Cf. Robinson v. United States*, No. 6:21-CV-204-REW, 2024 WL 1219716, at *3 (E.D. Ky. Mar. 21, 2024) (declining to extend *Carlson* to encompass a claim that a nurse "feigned" medical checks upon the inmate while he was restrained); *Sanders v. Sumner*, No. 6:24-CV-055-REW, 2025 WL 1413517, at *1, 3–5 (E.D. Ky. May 15, 2025) (declining to extend *Carlson* to claim that inmate's fall while descending stairs was caused by inattention to inmate's impaired vision and failure to assign him to cell on lower floor).

The dividing line between these cases is best understood with reference to the Supreme Court's statement in *Egbert* that the "new context" analysis must be tethered to separation of powers considerations. *Egbert*, 596 U.S. at 491. Not every factual distinction is a meaningful one: the nature of the prisoner's ailments, the severity of his injury, or the defendant's motivations will not necessarily be relevant to the calculus. A difference between the case at hand and *Carlson* is "meaningful" if it presents a separation of powers consideration that is different from those already at play in *Carlson*. *See Bulger v. Hurwitz*, 62 F.4th 127, 138 (4th Cir. 2023); *Tate v. Harmon*, 54 F.4th 839, 846 (4th Cir. 2022); *Snowden*, 72 F.4th at 244.

Under *Egbert's* analytical framework, Browning's claim against BOP nurse Perry bears the familiar contours of those in *Carlson* in all meaningful respects. In both cases the Eighth Amendment's prohibition against deliberate indifference to medical needs establishes the

"constitutional right at issue" and the "legal mandate under which the officer was operating." *Ziglar*, 582 U.S. at 139–40. Both involve an alleged failure or refusal by a healthcare professional to provide appropriate medical care, and thus involve the same "risk of disruptive intrusion by the Judiciary into the functioning of other branches." *Id.* Because the deliberate indifference claim against Perry does not present a new context, the claim may proceed without engaging in the special factors analysis. *See Egbert*, 596 U.S. at 492; *Watanabe v. Derr*, 115 F.4th 1034, 1042 (9th Cir. 2024); *Mattox*, 2025 WL 2524845, at *10.

However, the other five defendants are not doctors or nurses, but prison guards, a counselor, and a warden. This is a meaningful difference for analytical purposes. The Supreme Court has expressly indicated that a case may present a new context if it involves a new category of defendants or claims against a different rank of officer. *Ziglar*, 582 U.S. at 135, 140; *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001) ("Since *Carlson* we have consistently refused to extend *Bivens* liability to any new context or new category of defendants."). *Carlson*, and the post-*Egbert* cases which have permitted prison medical care claims to proceed, involved Eighth Amendment claims asserted against prison health care providers. *Cf. Brooks v. Foreman*, No. 3:20-CV-599-DPJ-FKB, 2023 WL 11228264, at *3 (S.D. Miss. Aug. 24, 2023) ("[N]one of the *Carlson* defendants were guards accused of refusing to call for medical care . . ."). These defendants—three guards, a counselor, and an administrator—constitute a new category of defendants, thereby presenting a new context necessitating a special factors analysis. *See Malesko*, 534 U.S. at 68.

The Supreme Court has explained that when determining whether there are any special factors that counsel hesitation before extending the *Bivens* remedy to a new context

> separation-of-powers principles are or should be central to the analysis. The question is "who should decide" whether to provide for a damages remedy, Congress or the courts?
>
> The answer most often will be Congress. When an issue "involves a host of considerations that must be weighed and appraised," it should be committed to "those who write the laws" rather than "those who interpret them."

*Ziglar*, 582 U.S. at 135–36 (citations omitted). The Supreme Court expressly noted that "sometimes there will be doubt because the case arises in a context in which Congress has designed its regulatory authority in a guarded way, making it less likely that Congress would want the Judiciary to interfere." *Id*. at 137.

There are numerous reasons that a judicially-implied remedy for damages is not appropriate here. First, while Congress enacted 42 U.S.C. § 1983 to create a private damages remedy against state actors for civil rights violations, it has never done so for federal actors. *Matthews v. McCreary*, No. 6:24-CV-62-REW, 2025 WL 318096, at *4 (E.D. Ky. Jan. 28, 2025). Second, "alternative processes exist for protecting the right." *See Callahan*, 965 F.3d at 524 (citation omitted). These include the "full access to remedial mechanisms established by the BOP, including suits in federal court for injunctive relief and grievances filed through the BOP's Administrative Remedy Program." *Malesko*, 534 U.S. at 74; *see also id.* at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability.").[4] Further, "the threat of an investigation

---

[4] This remedy is not considered less effective merely because it is created by regulation rather than by statute, *Schweiker v. Chilicky*, 487 U.S. 412, 421–22 (1988) ("The absence of statutory relief for a constitutional violation . . . does not by any means necessarily imply that courts should award money damages against the officers responsible for the violation."), nor because it does not provide the deterrence afforded by damages, *Wilkie v. Robbins*, 127 S. Ct. 2588, 2597 (2007) ("[W]e have also held that any freestanding damages remedy for a claimed constitutional violation has to represent a judgment about the best way to implement a constitutional guarantee; it is not an automatic entitlement no matter what other means there may be to vindicate a protected interest, and in most instances we have found a *Bivens* remedy unjustified.").

through the BOP's Internal Affairs Office or the Department of Justice's Office of the Inspector General may also serve to deter misconduct." *Hower v. Damron*, No. 21-5996, 2022 WL 16578864, at *3 (6th Cir. Aug. 31, 2022). The Court therefore concludes that ample factors counsel strongly against implying a remedy under *Bivens* for Browning's claims against these guards and administrators, and declines to do so here. The Court will therefore dismiss the *Bivens* claims against Defendants Downey, Gabbard, Stapleton, Chitwood, and Gilley.

### B. State Law Claims

Browning asserts three claims under Kentucky law: (1) an assault and battery claim against Downey in Count II; (2) a claim for fraud against all defendants in Count III; and (3) a claim for civil conspiracy against all defendants in Count IV. [R. 42, pp. 9–13].

For his part, Downey seeks dismissal of the assault and battery claims on the ground that they are barred by the statute of limitations. [R. 46, p. 8]. He further contends that Browning's complaint fails to state a claim for either fraud or conspiracy. *Id.* at 9–11. He also asserts that the conspiracy claim is barred by the intra-corporate conspiracy doctrine. *Id.* at 10–11. Downey concludes with a one-paragraph assertion that, in the alternative, the Westfall Act bars all of these claims because he was acting within the scope of his employment when he committed the acts complained of. *Id.* at 11. Browning responded to Downey's argument under the Westfall Act, [R. 51, pp. 8–10], but he did not respond at all to Downey's alternative arguments for dismissal of the state law claims. *See generally id.* Downey notes as much in his reply. [R. 52, pp. 2–3].

Having failed to respond to Downey's Rule 12(b)(6) grounds for dismissal, Browning has forfeited any opposition to the dismissal of his state claims on those grounds: "a plaintiff generally concedes a defense when they fail to respond to the defendant's argument." *4th Leaf, LLC v. City of Grayson*, 425 F. Supp. 3d 810, 823 (E.D. Ky. 2019) (citation omitted); *see also Humphrey v.*

*U.S. Att'y Gen.*, 279 F. App'x 328, 331 (6th Cir. 2008) ("[W]here, as here, plaintiff has not raised arguments in the district court by virtue of his failure to oppose defendants' motions to dismiss, the arguments have been waived."); *Heyward v. Cooper*, 88 F.4th 648, 654–56 (6th Cir. 2023) (finding forfeiture applies where "[a] plaintiff filed a response to a defendant's motion to dismiss but only included some of its arguments"); *Paul v. Whitley Cnty. Det. Ctr.*, 712 F. Supp. 3d 907, 921–22, 922 n.2 (E.D. Ky. 2024) (collecting cases), *aff'd sub nom. Paul v. Whitley Cnty. Det. Ctr.*, No. 24-5142, 2024 WL 4362260 (6th Cir. Sept. 30, 2024). The Court will therefore grant Downey's motion to dismiss the state law claims against him and dismiss him as a defendant in this action.

The Court now turns to the argument of the remaining defendants that the Westfall Act immunizes them from liability for state law torts. These defendants assert that the acts complained of were committed within the scope of their employment for the BOP and, therefore, that the Court lacks subject matter jurisdiction over the state law claims. [R. 45, pp. 16–17 (*citing* 28 U.S.C. § 2679(b))].

The Court rejects this argument for two reasons. First, while the defendants reference the Westfall Act, they do not actually make ***any*** argument explaining why it benefits them in this case. The defendants' urging amounts to little more than a single page in which they identify Browning's fraud and conspiracy claims; set forth pertinent Kentucky law explaining the nature of such claims; state that § 2679(b) requires state tort claims against federal employees for their job-related acts to be asserted against the United States; and conclude, without explanation or reasoning, that Browning's claims must be dismissed. *See id*.

This is not argument; it is merely conclusion. Notably, these defendants emphasize that they are making only a facial attack to the Court's jurisdiction, a kind that "merely questions the

sufficiency of the pleading." *Id*. at 5. But the defendants do not point to any deficiency in Browning's amended complaint. Indeed, it would be difficult to see how they could do so. Browning included no allegation in his complaint that the defendants were or were not acting within the scope of their employment, nor was he required to do so to assert any of his state law claims. *Cf. Jamison v. Wiley*, 14 F.3d 222, 236 (4th Cir. 1994) ("Jamison specifically alleges that Wiley committed various acts of sexual harassment. Wiley makes no effort to explain how those alleged acts are 'facially' within the scope of his employment under Virginia law; instead, he simply ignores them and concentrates on paragraph 5, which contains allegations of various acts of on-the-job harassment of a non-sexual nature. Even those allegations, however, involve conduct that may or may not be within the scope of employment under Virginia law, depending on the motives behind it.").

The defendants having failed to make any argument in support of this ground for dismissal, the Court declines to undertake the effort for them. *See Lipman v. Budish*, 974 F.3d 726, 749 (6th Cir. 2020) (citation omitted); *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived . . . . It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones." (citation omitted)); *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989) ("A district court need not scour the record to make the case of a party who does nothing."); *Boynton v. Headwaters, Inc.*, 737 F. Supp. 2d 925, 930 (W.D. Tenn. 2010) ("It is not [the Court's] job, especially in a counseled civil case, to create arguments for someone who has not made them[.]" (internal quotation marks and citation omitted)).

The defendants have also failed to establish that they invoked the necessary procedures to seek protection under the Westfall Act. The subsection they reference provides that an action against the United States under the FTCA is the exclusive remedy for an injury "arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." § 2679(b)(1). It expressly states, therefore, that "[a]ny other civil action . . . for money damages arising out of or relating to the same subject matter against the employee . . . is precluded." *Id.*

While the defendants invoke this subsection, it does not stand alone. Rather, it is part and parcel of a comprehensive statutory and regulatory procedure that requires affirmative administrative and legal steps by the defendant employee and his employing agency, as well as the participation of the Attorney General, before a Court may determine whether the federal employee was acting within the scope of employment for purposes of the FTCA. *See* 28 U.S.C. § 2679(d); 28 C.F.R. §§ 15.1–4; *Osborn v. Haley*, 549 U.S. 225, 229–30 (2007) (describing procedures).

When a federal employee—or a "covered person" as defined in § 15.1(b)(3)—is sued for an employment-related act, he is required to promptly deliver all process, pleadings, or other pertinent information to his supervisor or designee. § 15.2(a), (b); 28 U.S.C. § 2679(c). The supervisor or designee is then required to deliver these documents to the local United States Attorney and to the responsible Branch Director of the Torts Branch in the Department of Justice's Civil Division. 28 C.F.R. §§ 15.2(a), (b); 28 U.S.C. § 2679(c). The employing agency is then required to generate a report addressing whether the employee was a "covered person" acting within the scope of employment and to send that report to the local United States Attorney and to the Justice Department's Torts Branch. 28 C.F.R. §§ 15.3(a), (b). The local United States Attorney then may, based upon the information provided, file a certification into the record of the Court

action that the employee was a "covered person" acting within the scope of employment. 28 C.F.R. §§ 15.4(a), (b). The regulations expressly provide that the Assistant Attorney General in charge of the Justice Department's Civil Division may withdraw such certifications at any time before trial when new or additional evidence calls for such action. *See* § 15.4(c).

Individually and collectively, the statute and regulations establish that the input and participation of the employee's agency, the Justice Department, and the Attorney General or her designee is essential before a Court makes the scope-of-employment determination. This is especially so because "[t]he Attorney General's certification provides *prima facie* evidence that the employee was acting within the scope of employment." *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125, 1143 (6th Cir. 1996) (citation omitted). Thus, "the burden of altering the status quo by proving that the employee acted outside the scope of employment is . . . on the plaintiff." *Omnipol, A.S. v. Multinational Def. Servs., LLC*, 32 F.4th 1298, 1305 (11th Cir. 2022) (citation and quotation marks omitted). Leaving the Attorney General entirely out of the process deprives her of any input on the question and to the presumption of correctness to which she is entitled.

A plain reading of the statute itself reinforces this understanding. The statute precludes a civil tort action against a federal employee for work-related acts precisely *because* the exclusive remedy for such claims is an action against the United States. *See* 28 U.S.C. § 2679(b)(1). Employee immunity and government substitution are thus two sides of the same coin. And the Westfall Act's protection of federal employees is effectuated by the procedures set forth in § 2679(d). In a federal court action, if and once the Attorney General certifies that the employee was acting within the scope of employment, the United States is substituted as the defendant, assuming that the Court agrees with the certification. 28 U.S.C. § 2679(d)(1); *Dolan v. United*

*States*, 514 F.3d 587, 593 (6th Cir. 2008) ("[T]he Attorney General's scope-of-employment certification is subject to judicial review for purposes of substitution." (citation omitted)).

Conversely if, after the employee makes a certification request to the Attorney General but she "refuse[s] to certify scope of office or employment," the employee may *then* ask the Court "to find and certify" that he was acting within the scope of his employment. 28 U.S.C. § 2679(d)(3). Notably, the effect of such a finding is not dismissal of the state tort claims against the employee but substitution of the United States in his stead. *See id.*; *Dolan*, 514 F.3d at 593 ("[I]f the defendant federal employee was acting in the scope of his or her employment, substitution of the United States as defendant is appropriate."). The government, of course, has a clear stake in addressing the scope-of-employment question because it faces liability under the FTCA if the scope question is answered in the affirmative.

Accordingly, and regardless of whether the Attorney General does or does not ultimately certify that the employee was acting within the scope of his employment, under the statute, the Attorney General is always both made aware of the suit and is given the first opportunity to weigh in on the scope-of-employment question. This is the longstanding view of courts considering the matter:

> Immunity under the Act depends upon the Attorney General's certification that the employee was within the scope of his employment, and Congress delegated the authority to make that determination to the Attorney General. . . .
>
> Although other courts have found that the exclusivity provision is absolute, and that the only remedy is against the United States, we cannot read the statute to support that interpretation. That interpretation would write the certification and forwarding of process papers requirements completely out of the statute and would allow the employee to ignore the section (c) requirements, and thus to profit by his failure to comply with the statutory requirements.

*Tassin v. Neneman*, 766 F. Supp. 974, 976 (D. Kan. 1991) (citations omitted); *see also McLaurin v. United States*, 392 F.3d 774, 780 n.26 (5th Cir. 2004) (collecting cases); *Butt v. Williams*, No.

CBD-20-2318, 2021 WL 3172271, at *3 (D. Md. July 27, 2021) ("Without Defendant completing this initial step of going through the certification process, the Court finds that the Westfall Act has not been activated and immunity does not apply at this stage." (citation omitted)); *Combs v. United States*, 768 F. Supp. 584, 591–92 (E.D. Ky. 1991) ("Sergeant Hall did not assert section 2679 as a defense in the state court suit and did not deliver copies of the process to the Attorney General or his agents. Furthermore, neither the complaint nor the answer asserted that Hall was acting within the scope of his employment at the time of the accident. Thus, scope of employment never became an issue, the Attorney General never certified the issue, and the issue was not litigated. Since Hall did not comply with section 2679(c), exclusivity was never effectuated."); *Salazar v. Ballesteros*, 17 F. App'x 129, 131 (4th Cir. 2001) ("[T]he Westfall Act never was activated, because Ballesteros apparently failed to follow the elaborate statutory procedures."); *Price v. City of Rock Hill*, No. 0:21-2686-TLW-SVH, 2022 WL 1446887, at *7 (D.S.C. Mar. 16, 2022) ("As in *Salazar*, here, too, the problem in this case is that the Westfall Act has not been 'activated' and the case remains against Norman, not the United States."), *report and recommendation adopted*, No. 0:21-CV-02686-TLW, 2022 WL 1261352 (D.S.C. Apr. 27, 2022); *Hua Zhu v. Vu*, No. 04-CV-1709-W, 2007 WL 9710824, at *1 (W.D. Okla. Mar. 6, 2007) (noting that in order to invoke 28 U.S.C. 2679(b)(1), "the United States Attorney General or his designee must certify that the defendant was acting within the scope of her employment at the time of the alleged tort").[5]

---

[5] In a single case decided more than thirty years ago, the Second Circuit held that an employee's legal brief, filed only in a court of law and undelivered to the Attorney General, can qualify as a petition to the Attorney General to certify the scope-of-employment determination. *See B & A Marine Co. v. American Foreign Shipping Co.*, 23 F.3d 709, 715–16 (2d Cir. 1994)). For all of the reasons set forth above, the Court rejects the decision of the *B & A Marine* court as analytically unsound: a Court cannot validly effectuate a statute by giving effect to only certain subdivisions while flatly disregarding others, including the procedural requirements to invoke it. As noted by the concurring Judge,

> I do not agree with that portion of Section V of the court's opinion which holds that "in the absence of a certification by the Attorney General, the statute permits the court to

In light of the foregoing, the Court will deny the remaining defendants' motion to dismiss the state law claims against them. The Court will assign this matter to a Magistrate Judge for pretrial management.

### III. CONCLUSION

Accordingly, it is **HEREBY ORDERED** as follows:

1. Defendant Gavin Downey's Motion to Dismiss Second Amended Complaint, [**R. 46**], is **GRANTED** and all claims against him are **DISMISSED**. Downey is **DISMISSED** as a defendant in this action.

2. The remaining defendants' Joint Motion to Dismiss, [**R. 45**], is **GRANTED IN PART** and **DENIED IN PART**. The *Bivens* claims against Defendants David Gabbard, Chris Stapleton, Bobbie Chitwood, and Warden John Gilley are **DISMISSED**, the *Bivens* claims against Defendant Brandon Perry **REMAINS PENDING**, and the state law claims in Count III and Count IV against defendants Perry, Gabbard, Stapleton, Chitwood, and Gilley **REMAIN PENDING** in this case.

3. Pursuant to 28 U.S.C. § 636(b) and General Order 25-18(2), this matter shall be **RANDOMLY REFERRED** to a United States Magistrate Judge to conduct all pretrial proceedings, including preparing proposed findings of fact and conclusions

---

certify . . . § 2679(d)(3)." Insofar as that statement suggests that the statute authorizes the court to certify *sua sponte*, I find nothing in § 2679(d)(3) which supports it.

*B & A Marine*, 23 F.3d at 717 (Glasser, J., concurring); *see also id*. at 718–19. While the approach may "favor judicial economy," *Hoffman v. Hemingway*, No. 2:20-CV-13264, 2021 WL 7160489, at *8 (E.D. Mich. Nov. 18, 2021), *report and recommendation adopted*, 2022 WL 533044 (E.D. Mich. Feb. 22, 2022), such expediency is not an appropriate ground for the Court to disregard clear statutory commands.

of law on any dispositive motions. The Clerk shall **ASSIGN** this matter to a Magistrate Judge.

This the 4th day of March, 2026.

*Claria Horn Boom*
CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY